UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFFORD E. MYERS, | : | 1:25-CV-01553 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| DALTON JAMES JONES, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Clifford E. Myers ("Myers"), brings unspecified claims against a police officer who allegedly questioned and searched Myers during a traffic stop. After conducting a preliminary review of Myers' amended complaint in accordance with 28 U.S.C. § 1915(A), we concluded that it failed to allege a claim upon which relief can be granted, and we granted Myers leave to file a second amended complaint. But Myers did not file a second amended complaint. Accordingly, we recommend that the Court dismiss the amended complaint and close the case.

## II. Background.

Myers initiated suit pro se by filing a complaint on August 21, 2025. *Doc. 1*. He also filed a motion for leave to proceed *in forma pauperis*, which we granted.

*Docs. 3, 6.*  On October 9, 2025, Myers filed an amended complaint. *Doc. 8.*  On November 5, 2025, Myers notified the court that he was released from the Lebanon County Correctional Facility and updated his address with the court. *Doc. 10.*

The following factual allegations are taken from the amended complaint. The events described in the amended complaint take place in the early hours of January 30, 2023, when Myers and an unnamed passenger were driving in Myers' car in Palmyra, Pennsylvania. *Doc. 8 at 1, 3.*  At approximately 12:35 a.m., Myers parked on South Franklin Street to put coolant in his car. *Id.* at 1.  "As [Myers] was removing items out of the trunk so [he] could get to the coolant[,] [he] observed a marked police vehicle parked on the other side of '422/Main Street' on 'North Franklin Street.'" *Id.*  When he was finished putting the coolant in his vehicle, Myers "put the coolant back into the trunk[.]" *Id.*  As he did so, "the police vehicle drove pas[t][,] and Myers waved and continued putting the items" which he took out of his trunk to get the coolant "back into the trunk of his vehicle." *Id.* (cleaned up).  As Myers returned the items to his trunk, he saw the police vehicle drive up the street, U-turn, and then park with its lights off. *Id.*

Myers then proceed to his next stop, McDonald's. *Id.* at 2.  When Myers discovered that McDonald's was closed, however, he went to Sheetz, where he parked and went in. *Id.*  Myers was in Sheetz for approximately five minutes while he "purchased food[.]" *Id.*  As Myers returned to his vehicle, he "observed a police

vehicle parked directly behin[d] [Myers'] vehicle on the other side of" the street. *Id.* Myers describes this parking spot as "a[n] uncommon spot that [he] never seen [sic] before." *Id.* "As soon as [Myers] got into [his] vehicle [he] started recording on [his] cellphone because of a[n]" unspecified "incident that happen[ed] two weeks prior, and it looked to be the same officer that passed by [him] when [he] was putting coolant in [his] vehicle on []South Franklin Street.[]" *Id.*

Myers pulled out of the Sheetz parking lot and began to drive. *Id.* As he proceeded through an intersection, "a vehicle made a right turn and got behind [Myers' car]"; at the same time, "the officer [sic] pulled out and started driving the same direction." *Id.* Thus, the police vehicle was following Myers with one car between them. According to Myers, the speed limit in that area is 25 miles per hour but it increases to 35 miles per hour approximately "4 to 5 miles up the road somewhere pas[t] the Filling Station restaurant." *Id.* The vehicle that was following Myers turned right again, such that the police vehicle was now directly following Myers "at a close dist[a]nce that [he] felt was odd and unsafe." *Id.* Because his speed was 28 or 29 miles per hour, Myers "de[c]ided to pull over to let the officer pass by [him], because [he] was uncomfortable with the officer following so close." *Id.* at 2–3. Myers thus made a right turn. *Id.* at 3. As he turned, "the officer activ[a]ted his lights and pulled over behind [Myers]." *Id.*

3

Officer Dalton James Jones ("Officer Jones") "apro[a]ched the passenger side and asked for [Myers'] license, registration, and insurance" and "asked [Myers] if [he] had bee[n] drinking[.]" *Id.* Officer also said "it's odd for someone to drive '10 M.P.H.' under the speed limit without unneccesing [sic] reasons." *Id.* According to the amended complaint, "there is video of this inc[i]dent proving [Myers'] spee[d] was not under the speed limit of '25 M.P.H[.]'" *Id.* "After Officer [Jones] was done talking to [Myers][,] he asked [Myers'] passenger if she was the Pauline Gonzalez that use[d] to work at Mc[D]onald[']s." *Id.* Officer Jones then returned to his vehicle, and Myers told his unnamed passenger that "they are most likely gonna [sic] want to search the vehicle" and that she should start recording the interaction on her phone. *Id.*

"Officer [Jones] returned to the vehicle on [Myers'] side and another officer appro[a]ched the passenger side of the vehicle." *Id.* Officer Jones asked Myers why he had been at the Dutch Motel. *Id.* When Myers replied he was not at the Dutch Motel, Officer Jones told Myers "not to lie to him and to cooperate, that he is trying to throw [Myers] a bone." *Id.* Myers "said to him with an attitude [that] [he] was parked on the side street of 'South Franklin Street' putting coolant in [his] veh[i]cle not at the 'Dutch Motel.'" *Id.* Myers further replied, "why do you keep questioning me about the 'Dutch Motel' . . . is it because you see two insulin needles on my dashboard?" *Id.* Myers also "grabbed [the needles] and showed

them to him and advised him they are brand new not [sic] used" and returned the needles "to the shelf on [his] dashboard." *Id.* at 3–4.  After "some more questioning[,]" the nature of which is not described in the amended complaint, Officer Jones asked Myers to exit his vehicle and "frisks [Myers] looking for drugs and weapons[.]" *Id.* at 4.  Officer Jones also "searched [Myers'] cig[]arette pack" and "continue[d] to question [Myers] on what he was doing[.]" *Id.*

Officer Jones then asked Myers if he could search Myers' vehicle, to which Myers consented. *Id.*  The officers told the unnamed passenger to exit the vehicle and searched it, finding "a broken attachment for [Myers'] marijuana bong and 3 old needles and a couple needle caps." *Id.*  "Officer Jones told [Myers] that he had to consul[t] with his supervisor about the possibility of charging [Myers] with drug paraphernalia" and allowed Myers to leave. *Id.*  The amended complaint does not state whether Myers received any criminal charges as a result of his interaction with Officer Jones.

The amended complaint identifies a single defendant, Officer Jones.  *Id.* at 1. Myers does not identify the claims he brings against Officer Jones, however, instead simply states that Officer Jones "intentionally and maliciously lied about [Myers'] speed to pull [his] vehicle over[,]" that Officer Jones "harassed and profiled [Myers] by looking [him] up and went off [his] record hoping that [he] had drugs or weapons in the vehicle[,]" and that Officer Jones' actions

"intentionally violated [Myers'] constitutional rights and he acted with callous and reckless disregard for [Myers'] rights." *Id.* at 4–5. Myers seeks unspecified "declar[a]tory, injunctive and other equitable relief and damages[.]" *Id.* at 5.

On February 23, 2026, we issued an order explaining that Myers' amended complaint failed to state a claim, and granting Myers an opportunity to file a second amended complaint on or before March 19, 2026. *Doc. 12.* Myers did not do so. *See docket generally*.

## III. Screening of *In Forma Pauperis* Complaints—Standard of Review.

This court has a statutory obligation to conduct a preliminary review of complaints brought by prisoners given leave to proceed in forma pauperis in cases that seek redress against government officials. Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) Screening. The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal. On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A(b)(1), the court must assess whether a complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or a

formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. City of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

8

> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim."  Second, the court should identify
> allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth."  Finally, "where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Discussion.

Myers fails to clearly state what claims he intends to bring against Officer Jones.  Accordingly, Myers' amended complaint does not comply with the pleading requirements of Federal Rule of Civil Procedure 8 which requires, among other things, that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the

. . . claim is and the grounds upon which it rests.'" *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93).  Here, the amended complaint does not provide fair notice of what Myers' claims are.  It is unclear at what point Myers alleges his constitutional rights were violated—when Officer Jones followed his vehicle, when Officer Jones pulled him over, when Officer Jones searched his person, when Officer Jones searched his vehicle, or at some other point.  And it is unclear which of Myers' rights he alleges were violated.

Before dismissing a complaint under a screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  Because we previously granted Myers an opportunity to amend his complaint and he did not do so, we conclude that it would be futile to grant Myers further leave to file a second amended complaint.

## V.  Recommendation.

Based on the foregoing, we recommend that the court dismiss Myers' amended complaint and close the case.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. ' 636 (b)(1)(B) or making a recommendation for the

10

disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of April 2026.


                                        _S/Susan E. Schwab_
                                        Susan E. Schwab
                                        United States Magistrate Judge

11